I understand from our clerk that everybody is present, so I'm going to dispense with the calling of the calendar, and we'll get right to it in Ruiz versus Santander Ruiz et al. versus Santander et al. I realize there are a number of US parties. Thank you, Your Honor. Good morning. Good morning. May it please the court. I'm Javier Rubenstein, representing the Del Valle petitioners. I will address the jurisdictional issues, and my colleague, Mr. Mader, will address the remaining issues in his argument. 28 U.S.C. section 1782 allows district courts to order discovery from any person who resides or is found in the district. The district court below held that it lacked personal jurisdiction over Banco Santander under section 1782, and in doing so committed reversible error for at least three reasons. What does found mean? Found, the plain meaning of the word would require some form of presence, but this court in Edelman interpreted found in section 1782 to be coextensive with the requirements of due process. In other words, sufficient contacts in the district to justify personal jurisdiction under the due process clause, and the court explained in Edelman that if due process was satisfied, that section 1782 and the term found in the statute did not impose any additional requirements above and beyond due process. Let's say our responsibility is to fashion a test that will cover cases that are coming down the line. What should we say found means? Found means sufficient contacts with the district that are that are sufficient to comply with due process. If the basis of jurisdiction is specific personal jurisdiction, then in that case the respondents contacts in the district must either relate to or arise from those activities. So in this case, we're relying on specific personal jurisdictions, so the test is whether the discovery that sought arises from or relates to the respondents contacts with the district. And how is that test met here? So in this case, the appellants are seeking discovery regarding Santander's participation in the acquisition and resolution of Banco Popular. In this district, both before and after the acquisition, Banco Santander participated in a multi-billion dollar capital raise in order to be able to fund that acquisition. Both before and after. Before the the acquisition, Banco Santander engaged investment bankers in this district to be able to conduct due diligence and prepare for the capital raise that was necessary in order to be able to carry out the acquisition. But you concede the general jurisdiction is applied under the Daimler test and it's not satisfied here in for documents like this? If the test of general jurisdiction is the same in the discovery context as it is in the liability context, we do not, we do concede that Banco Santander is neither incorporated in in New York nor has its principal place of business. Your argument is that found doesn't mean that. That's correct. The found covers... Let me stop you for just a second and for all of you gentlemen, we're gonna add some time because this is obviously an interesting and a bit complex case. So why don't we give everybody two more minutes in their time and appellees will have plenty of time. Yeah, in this case... That goes for appellees as well. If I could just follow up on that, then you concede that the the Daimler test applies both for jurisdiction as well as document production under 1782? For a corporation, the rules are the same. You don't think it's different. You know, at least you're not arguing it here. You're just arguing specific jurisdiction. That's correct. I mean, certainly in an appropriate case where general jurisdiction was otherwise met, it would apply. But in this case, we do contend that the statute also encompasses specific personal jurisdiction and we are relying on specific personal jurisdiction in this case and not general jurisdiction. In this case, the court has personal jurisdiction under section 1782 both as a statutory matter and as a constitutional matter. As a statutory matter, by any measure, Banco Santander is found in the Southern District of New York, both because of its long-standing and substantial business activities in New York City. Banco Santander has operated a branch in New York City for since 1978 with over 25 billion dollars... What's relevant to specific jurisdiction? So in both Chloe as well as in Bank Brussels Lambert, this court held that the relevant contacts for jurisdictional purposes, in addition to those on which the cause of action, or in this case the discovery, either arises from or relates to, other contacts can also be taken into consideration. So, for example, in Chloe, this court relied in part on the fact that the defendant in that case, in the trademark infringement case, had sold bags, counterfeit bags, involving manufacturers that were not part of the cause of action. The court nonetheless found that that was still part of the general plan that demonstrated that the defendant was targeting the particular district. So we certainly are not saying that unrelated contacts by themselves would be sufficient, but what we are saying is that where, in this case, the respondent's contacts arise from or relate to the discovery that is being sought, combined with other acts... How does a branch in New York City relate to that? So in this case, if, for example, the term found is interpreted to involve some form of presence in the district, then the fact that they have had a branch in New York City since 1978 certainly implies a presence in the district. But in addition to the statutory grounds, we also believe that the assertion of personal jurisdiction over Banco Santander easily meets due process, because Santander has substantially availed itself of the privileges of doing business in New York and has purposely directed its activities at this district for decades. For all of these reasons, we respectfully ask this court to reverse the district court's holding and to find that the district court has specific personal jurisdiction over Banco Santander to order the request of discovery. I reserve the balance of my time. Yes, you've got two minutes for rebuttal, Mr. Rubenstein. Thank you. Mr. Mader? Good morning, your honors. May it please the court, David Mader from Quinn Emanuel Urquhart and Sullivan on behalf of the PIMCO and Anchorage petitioners. Your honors, since 1964, section 1782 has authorized document discovery in accordance with the federal rules of civil procedure. And since prior to 1964, those rules have been consistently interpreted to allow discovery of materials in a respondent's possession, custody, or control, regardless of physical location. As the 11th Circuit held in Sarajevo, the only circuit court to have decided this question to date, the express incorporation of the federal rules demonstrates that section 1782 likewise permits discovery of materials in a respondent's possession, custody, or control, even if those materials are located abroad. Santander argues on appeal that the reference to the federal rules is not enough. They say that if Congress had intended section 1782 to reach documents located abroad, it would have said in the statutory text that it reached documents located abroad. But in Morrison versus National Australian Bank, the Supreme Court said that such an explicit statement in the statutory text is not required to overcome any presumption against extraterritorial application. But they've spoken, the Supreme Court has spoken to extraterritoriality in cases subsequent to Morrison. R.J. Arnabisco, that one. Yeah, that's the one. That's the one you're thinking of. Yeah. Yeah. And in the civil context, it seems to me they put even more stretchers. Am I wrong? Your Honor, I think that they have, well, we would first say that the cases that the Supreme Court has addressed since Morrison all involve, to a greater or lesser degree, conduct regulating statutes. The ATS, it was characterized as jurisdictional. It is, but it creates jurisdiction for the enforcement of a conduct regulating cause of action. Similarly, the RICO statute allows the enforcement of a conduct regulating predicate statute. But even if the presumption were to apply to a statute like 1782, what it requires is a clear indication, not a clear statement. There was an exchange between Justice Stevens in dissent and Justice Scalia and the majority in Morrison about that question. And Justice Scalia denied that Morrison imposed any explicit statement rule. And I would submit I don't think any of the subsequent cases have imposed any greater requirement. In this case, in some ways, I mean, it's arguably kind of a perversion of 1782, because the point of 1782 was to cut through the impediments imposed by letters rogatory, which were cumbersome and inefficient and so forth, and give people a different and more clear-cut route to getting discovery to be used in foreign proceedings. But here, you've come to New York, and you're trying to get documents that are, the vast majority of them are in Europe. You're trying to get them for use in European proceedings that have their own discovery rules. And you're trying to capitalize on what seems to me to be slight contacts between the transaction in New York City to walk around all of this European litigation you're involved in. Well, a number of points, if I may, Your Honor. First, I think my clients, PIMCO, Anchorage, are American entities, so I don't think that we've come from abroad to take advantage of American statutes. I will say that ex-ante, I'm not sure there's a... I was tarring you with your... I understand, but I don't know the distinction, frankly. I mean, the idea of 1782 is to make American procedures abroad to litigants in foreign proceedings, as you say. I think a consequence of the per se bar that Santander is asking for here is that the same subpoena, if issued in a domestic litigation, would reach documents in a respondent's control that happened to be located abroad. But if that exact same subpoena is served on the same party out of the same issue in court in support of a foreign litigation, it would not reach those documents. And we would submit that that's... There are reasons for that. Well, we would think that we submit that's contrary. But in any event, I would say, moreover... Can I just follow up on Judge Parker's question about that, though? Of course. It's that wouldn't you have a problem with the third intel factor? In other words, if you got there where you could issue the 1782 request, the third intel factor says it can't be an attempt to circumvent foreign proof-gathering restrictions. And if these documents are in Spain or the EU, why wouldn't that run right up against that? Well, I think you put your finger right on it, Your Honor. It is a factor to be considered by the district court in its discretion under intel, and the district court did make an intel discretionary determination here. But only as to SIS. Well, it got to SIS because it had made what we believe to be an erroneous holding as to its ability to enforce 1782 discovery as to the other entities. But as to SIS, the determination was that this discovery was not, as a practical matter, available. There is the question... Well, it was really focusing on the first factor, that there was not... The Santander entity, certainly SIS, is not a party to any of those foreign proceedings. SIS being the domestic entity that we got discovery on. But the others are. The others are, but... So why follow that third factor of intel? If I might, in the EU general court proceeding, some of the Santander entities have applied to intervene. We have put in an affidavit. It's obviously not my area of expertise, European law, but my understanding is that it's far from clear that the interest Santander claims there will be sufficient to allow intervention. And it has not yet intervened. So in that proceeding, it's out. And in the Spanish criminal proceedings, the district court noted that Santander had, at the point, at the time of the order, produced only 12 documents, that it was not participating and did not seem to be quick to participate in that proceeding. Intel also advises that the discoverability of the requested documents is not a barrier... In foreign proceedings, is not a barrier, a per se statutory barrier to discovery under section 1782. My point, really, Your Honor, would be that all of these things are factors a district court is well-equipped to assess on an application. It has the authority in the statutory text to set the procedures for discovery. And it has the authority under intel to exercise its discretion to deny discovery. Here, that didn't happen. The district court did order the discovery. And what we are resisting is the imposition of an extra textual per se bar in the statutory text, which, again, Intel cautioned against doing precisely in section 1782. As you're wrapping up, tell me the test for specific personal jurisdiction that you would have us fashion that will apply to cases coming along after this one. Your Honor, I would refer to the arguments made by Mr. Rubenstein, my colleague, who really addressed those. But we join with him. We're not suggesting a different standard. I have no thoughts of this on your own. That's fine. Your Honor. That's fine. One other point, if I may briefly, is that, and I think I began to say, in an electronic age, we don't think a petitioner will know ex ante where a respondent's documents are necessarily located. We don't think the court will know. And so we don't think that Santander's proposed rule would affect in any way the number of applications under 1782. All it would do is require the district court to make a finding in the first instance as to the location of responsive documents. 1782, we think, doesn't impose that burden on the district courts. Its focus is not on the location of documents, but on the location of the respondent. As long as the respondent is here under the appropriate test, it is compelled to participate in discovery. The district court can limit that discovery. But if it is pursuant to the Federal rules, it reaches all documents within that. The problem I have with your approach is that, I mean, if we adopt what you want wholesale, it will mean that this city, really, will become the world capital for discovery. I mean, every major bank has offices here. Every foreign financial institution of any kind of consequence has branches here, etc., etc. And it's a city full of good lawyers. And, you know, come to New York and get your discovery for use in Buenos Aires or Azerbaijan. Well, Your Honor, the statute in its present form has been on the books since 1964. There's been nothing to prevent. And, as we say, since 1958 in Rogers at least, the Supreme Court has interpreted the Federal rules in possession, custody, and control to reach documents located abroad. But the whole problem with that is that those rules were fashioned, you know, before the cloud, before the, you know, massive documents that are online. And possession and custody and control had a very different connotation 25 years ago than it does now. I mean, every document that, you know, Paribus Bank has could probably be accessed through some computer up on Park Avenue in their office here. Well, I think that's an issue the Court addressed in the Microsoft case, both in the panel decision and in the denials, the dissents from the denial of rehearing in Bank. There, it's a case that Santander relies on, there the question was whether a subpoena under the Stored Communications Act, sorry, a warrant under the Stored Communications Act ought to be treated like a civil subpoena under the Federal rules or like a criminal warrant, which is generally territorially restricted. And the answer in that case was that it ought to be treated like a warrant and therefore did not reach abroad. The assumption among everyone, as far as I read the cases, is that if it were treated as a civil subpoena, it would reach abroad. We also think that, I think the point that Judge Roney raised in his denial from, his dissent from the denial of rehearing is that the focus in discovery is typically on the location of the party. It may be, Your Honor, that Congress needs to revisit the rule it established in section 1782, but that's for Congress. And respectfully, it is not for the courts to impose an atextual limitation that is not there on the plain language of the statute. Scalia. You do it from time to time. Roberts. Well, the Supreme Court specifically cautioned in Intel against doing it with respect to 1782 in particular. Scalia. Thank you. Roberts. Thank you. Scalia. You've reserved? No, you have not. Mr. Rubenstein has. Mr. Lynn, good morning. Good morning. May it please the Court, my name is Albert Lynn, and I represent the respondents below. Your Honors, if I may, I'd like to start with where Judge Parker had started, which is what is the meaning of the word found? And as my friend here, I think, candidly admitted, the plain meaning of the word found is physical presence. And that's what this Court said in Edelman. So was Edelman a tagged jurisdiction case? The holding applies to tagged jurisdiction? Yes, Your Honor. It was dealing with an individual who was a non-resident. Who was subpoenaed when he came to New York City. Physically present in New York City, and they served process on him. And what this Court said in Edelman was, we endow the word found with the same breadth it is given in Burnham. And Burnham is a tagged jurisdiction case, but what it's talking about there is exercising general jurisdiction over a non-resident, physically present entity. But how does it apply to corporations, though? It doesn't. And I think that's exactly the point. So Edelman defines found as having the same breadth, which I think covers both the floor and the ceiling, as to what it means, which means that it goes to physical presence. Tagged jurisdiction doesn't apply, after Daimler, to corporations. 1782 is meaningless as to any corporate entity that is neither incorporated here nor here as its principal place of business. Yes, Your Honor. I think I'd use a different word than meaningless, but I would say 1782. And do you think Congress intended this meaningless statute as to every other principal place of business or as incorporated in New York? Surely they did not. I think if you look at the twin purposes, which are talked a lot about in the briefs as to efficiency and devising a regime that encourages other countries to follow the same pattern, to adopt the same type of statute, it does make sense. I think general jurisdiction is much more of an efficient and administrable regime than case-by-case specific jurisdiction where you're delving into the facts of what any individual entity did here. And then as to— Courts do, don't they? They delve into the facts and make some decisions, which generally we review for abuse of discretion. I don't disagree with that, Your Honor. I'm just saying that in terms of the purpose, one of the purposes is efficiency. And the other purpose is encouraging other countries to adopt the same regime. And a regime that is limited to general jurisdiction makes sense if you apply it in every country. Because then what you have is you come—if you can't get the discovery in your foreign proceeding, in the case itself, you go to the other country. If it's the United States— You had the letters rogatory, and as Judge Parker remarked, I think, in one of his questions earlier, that that was determined by Congress to be a relatively inefficient system. Well, what you have is— Which you know and I know from having probably tried to do it, right? What you have, under our reading of the statute, is you come to the United States. If there's a U.S. resident, there's a U.S. corporation, or there's an individual who is sojourning through the United States who is temporarily present but not physically present. And we have unique access to those individuals and entities and to order them to produce discovery to aid a foreign proceeding. And if the rest of the world follows that lead, which was one of the Spanish residents and individuals sojourning through Spain, you go to Spain and use their 1782. Maybe I missed it. What's the basis after Daimler to say specific jurisdiction doesn't exist under 1782? Everybody seems to agree that Daimler applies here to general jurisdiction as to corporations under 1782. You're arguing that that portion of Daimler that survives for specific jurisdiction wouldn't apply. Is that right? Is that what you're saying? No, Your Honor. So what we're saying is there's no dispute. So let's go back to the statutory language, if I may. Where it resides or is found. And everyone agrees that resides reaches residents and that that's most of general jurisdiction. Then found, what do you do with found? And we think that both the plain meaning and Edelman say that found applies where there's physical presence. And so before Daimler, maybe there's a good argument there that physical presence applies to both individuals and corporations. But after Daimler, you cannot apply a physical presence test to corporations. So you can't apply specific jurisdiction? You cannot apply general jurisdiction. Specific jurisdiction. What about specific jurisdiction here under 1782? Which is the basis for the SIS ruling? The basis for the SIS, the jurisdiction of our SIS was general jurisdiction. SIS is principal place of business is here in New York. That's right. And our argument is that found doesn't reach specific jurisdiction. Found reaches, as Mr. Rubenstein said, physical presence. General jurisdiction where there is physical presence. And you cite Edelman for that? And we cite Edelman for that. And we think that that's what Edelman says where it says that it endows found with the same breadth that it was given in the Supreme Court's decision in Burnham. And physical presence. It's your position that the 20 banks and the business offices that your client has here don't count. It wasn't incorporated here and its principal place of business is not here. Therefore, you can't use 1782 in New York against your client. Yes, Your Honor. That is our primary position. Let's assume for the moment they were intimately involved with every detail of the deal. You still couldn't use 1782. Under our primary argument, and we have arguments as to specific jurisdiction, but as to our primary argument, our contention is that resides or is found only goes as far as general jurisdiction. And as I was discussing with Judge Hall, if the United States succeeds in one of their purposes in 1782, which is to get other countries to go to that foreign corporation's home. And you use the 1782 there to get the discovery from them. You don't have to come to the United States. The United States, 1782 was not meant to fix all the world's discovery issues. What's the problem with interpreting found essentially to be, to extend to the limits of due process protection? Our main argument is we think this court decided that in Edelman. We think the plain meaning of the word found doesn't get you there. We think it gets you only to physical presence, and that if you apply that to corporations, it runs into Daimler. But since my time is moving on, if we want to talk about specific jurisdiction, Judge Parker has asked, what would the test be for specific jurisdiction? And we think if you follow the lead of Gucci, the test is that there has to be a causal connection between the alleged specific contacts and the underlying foreign proceedings that the 1782 petition is seeking to aid. Because the test in the civil liability context is that there has to be a causal connection between the alleged contacts. That makes sense when you're talking about a claim. It does make a great deal of sense to me when you're talking about discovery. Well, I think what this court did in Gucci is it abstracted it and said, look, the connection has to be. The point of discovery is to look for information. I mean, it's to, among other things, to determine whether the documents that you're seeking establish the causal relation. And, Your Honor, I think in a case where you have, as in Gucci itself, just a discovery enforcement proceeding, so you've got a subpoena, you've gone to the district court, and you're seeking to enforce a subpoena, the causal connection between the alleged contacts and the relief requested is between the alleged contacts and the discovery request. Here, this is at an antecedent stage to the discovery request. What they're asking for is the district court to exercise its authority under 1782 and to grant their 1782 petition. There's not always going to be a discovery request at this stage in the proceeding. If you look at Edelman itself, the request in Edelman was that the district court grant a blanket authorization under 1782. And then later, the petitioner would come in with its specific discovery request. So, I think in the 1782 context, what we're talking about is the causal connection needs to be between the alleged contact and the petition itself. And the relief... Suppose Sander had come to this city and retained Goldman or, you know, JP Morgan to help them devise a strategy for taking over the bank. Could you get documents here under 1782? So, our first answer is that those aren't the facts here. We don't think that they... Of course they're not the facts.  Is this a new court? But I say that only because we don't think that they have alleged enough here to make a facial case that Citibank was retained. It's what's called a hypothetical question. I understand, Your Honor. And my response would be it depends on what the nature of the underlying foreign litigation is. Same foreign litigation as we have here. Then the answer would be no. And here's why. Because what's at issue in the underlying litigation is not Banco Santander's conduct in acquiring Banco Popular. What's at issue in the various foreign litigations that are at issue here is the conduct of the European regulatory authorities in determining that they should put Popular into resolution. What's at issue in the criminal proceeding is the management conduct of the Popular managers before and leading up to the resolution. So, we would say, Your Honor, even if there are sufficient facts to show that there was some sort of due diligence or planning done for the acquisition here in New York City, and we don't think there are, that would not be a but-for cause or a proximate cause. And as this Court knows, under Chu v. Dietrich, your specific jurisdiction causal connection is a sliding scale depending on how many contacts there are. We don't think it would either be a but-for cause or . . . Where do we get to yes in this case? What would the facts have to be if Judge Ramos should have ordered discovery? Forget the foreign stuff. Of course. Of course. Of course. So, I think, one, if you had a bank that had its principal place of business or headquarters incorporation in New York City, you'd have general jurisdiction. So, Banco would have to be here? If Banco were here. So, for example, SIS is here. We don't contest that there was general jurisdiction over SIS. There would also, if you were to extend . . . As to Santander, if Banco were here, we would have general jurisdiction? As to Santander, if Santander's PPB or place of incorporation were here in New York City, there would be general jurisdiction under Daimler. But suppose principal place of business is elsewhere, incorporation is elsewhere, but officials of the bank spend 500 hours with Goldman Sachs trying to develop a strategy to get their hands on the bank. The work product from those 500 hours with Goldman or J.P. Morgan couldn't be reached through 1782? Not in this case because the underlying litigation is not calling into question that conduct. If, to spin out the further hypothetical for Judge Hall, if . . . We would have a much, much closer case and maybe the answer would be yes. For the Goldman documents, right? If there were facts that showed due diligence, significant due diligence, all the due diligence happening here in New York City, the underlying litigation was specifically addressing the actions of Banco Santander and the actions that took place in New York City. And, Your Honor, you disagreed with us that 1782 resides or is found as limited. Forty-nine percent of the due diligence. I think you have to weigh the question of but-for cause versus proximate cause and how many contacts there are, right? I mean, I think if . . . But how could a judge do that in the context . . . All he's being asked to do is to so order a discovery request. If the judge had to do that, he'd have to close down shop and spend hours and hours and hours doing that. That strikes me as quite impractical, something we don't want to impose on district judges. Judge Parker, my answer to you there would be that's exactly, I think, the problem with getting into a specific jurisdiction analysis in the 1782 context. Look, before this case and before Daimler . . . The problem that I'm still wrestling with you is it seems to me that the general . . . I don't really see . . . You haven't convinced me that your general jurisdiction test is fair, reasonable. Your Honor, before this case, if I may continue, there's . . . No case, no court has ever held that resides or is found extends the limits of specific jurisdiction. What district courts had done . . . That's why I ask you what tests we might have to fashion, because we've got a job to do. The fact that you haven't found any cases, it's interesting, but it doesn't get us very far. Helping to create one. Yes, Your Honor. I was just trying to explain, give you an example of what district courts have been doing. The way that they have applied . . . You don't have much time. You can tell us what district courts have been doing, but we need to know what we should be doing. Well, Your Honor, I think . . . We think the meeting of found was determined in Edelman. I think that addresses the practicability concerns. However, I think if you extend the statute to specific jurisdiction, there's no basis for changing the way specific jurisdiction applies. As this Court recognized in Gucci, you translate the specific jurisdiction test from the civil liability context by asking what is the relief that is requested. In the civil liability context, you look for a causal connection between the claims and the alleged context. In the discovery, where you have a straight-up discovery request like a subpoena enforcement, you look for the causal connection between the alleged context . . . What do you mean the causal connection in the context of discovery? I don't get that. Well, under Chu, Your Honor, the question is do the alleged context . . . Are they a but-for or proximate cause of the relief requested? That doesn't make any sense in a discovery context because you're not dealing with a cause of action or a claim. You're simply asking for discovery. You're trying to learn something. Sometimes you're trying to confirm what you already know, but one of the major purposes of the discovery provisions is to find stuff out. Well, Your Honor, I'm not sure what the relaxed test would be, and the other side hasn't proposed one. To answer your question for the discovery . . . I'm giving you an opportunity for input into that because, as I told you a minute ago, we've got to fashion a test. In the discovery context, what this Court looked to in Gucci was what the Tenth Circuit did in Knowles. And it said the Tenth Circuit has translated the specific jurisdiction to the discovery context. And what the Tenth Circuit asked in Knowles was whether the alleged context led to the discovery request, so the specific requests that were being asked. Now, I think that the issue with applying that test here is that this is not always going to be . . . Judge Parker, to your point about needing a test for all 1782 petitions, there's not always going to be a discovery request in a 1782 context at the outset. And the reason for that is the request being made at the outset is a different question. It's asking, are the three statutory factors for 1782 satisfied? What does the District Court do with the intel factors? And so, we think that the relief being requested is that the District Court exercise his or her authority to aid a foreign proceeding. And so, that is the thing to which the alleged context must be connected, the underlying foreign proceedings. Here, the underlying foreign proceedings challenge the actions of the European regulators. They challenge the actions of the former popular managers. And so, even if there were facts here that had anything to do with Banco Santander's preparation, those would not be enough. But we also think that the facts alleged here are extremely thin. I mean, they include an allegation as to the CEO of Santander ringing the bell at the New York Stock Exchange. And then the, frankly, unreasonable inference that he then talked about something that had to do with this acquisition. But as to extraterritoriality, Your Honor, we think the Morrison test applies pretty straightforwardly here. Let me ask you something about Gucci. In Gucci, there was the injunction against the Bank of China, which got more discussion than the discovery requests. And as to that, we held that specific personal jurisdiction may permit the District Court to order the bank to comply with particular discovery demands. That's from Gucci. Do you say that doesn't apply to 1782? It just applied to the federal rule still procedure that were at issue in Gucci? Is that your position? Yes, Your Honor, because I think that there's an antecedent question here, right? Are the legal requirements for 1782 satisfied? That's what's being asked for. What they're asking for is the District Court to grant that authorization. And so we think the connection is not between whatever subsequent discovery. Are you saying that then the word found in 1782 means something different than what Gucci was talking about for specific jurisdiction under the federal rules of civil procedure document production? Is that why you think there's a distinction? Yes, to a degree. I mean, again, I think we think found is limited to physical presence. But I think – and so this is why I'm having a little bit of trouble with your question because we don't think found – I'm having a little trouble with your answer. So I'm trying to figure out what the distinction is with Gucci, which said if they can establish specific jurisdiction in Gucci, after talking about general jurisdiction and talking about the difference between the asset freeze order against the bank and then talked about the discovery request against the bank, in Gucci, the court, we said that you've got to apply the general test after Daimler for specific jurisdiction. Why doesn't that apply under 1782? That's the question. I think what this court said, as I understand Gucci, what this court said in Gucci is as to the specific jurisdiction analysis, you have to link – there has to be a link between the alleged specific contacts and the relief that you're asking for. And in that case, the relief that they were asking for was the discovery. And so the question that Judge Sullivan answered on remand was what were the things that are alleged to have happened in New York City and had to do with bank accounts and transfers, and those have a causal connection to the relief requested, the discovery. We're just saying that you take that same test, connection between the alleged contacts and the relief requested, and you apply that same test here. That's the same test for specific jurisdiction that applies in every context. The relief requested changes from context to context. In civil liability, the relief requested is in your complaint. In a discovery enforcement proceeding, the relief requested is in your complaint. So suppose the request said all documents are relating or referring to Stendanter's strategy for taking over the bank. We would say that that – Would that be sufficient? No. Why? Because that's not what is at issue in the underlying foreign proceedings, and that the relief – They suspect that – one of the things they're alleging is that some misrepresentations were made, that people who were involved in these transactions were using financial statements that had irregularities, and they think that could have risen out of – I want to see what Goldman or J.P. Morgan had to say about that, what their involvement was. Your Honor, I think if the underlying foreign proceedings were actually asking about things that get at Banco's conduct here, then it would be a different case. And I think your point about – as I was answering before, I think the connection would be tighter there. It couldn't be about Banco's conduct anywhere that Sandander ended up knowing about in the course of doing some due diligence here in New York. It found out about some stuff, and it ignored it. And therefore, they're in trouble with the – they've got a case going in Spain and the regulators – about the regulators and whether the declaration should be in place. Your Honor, I think it gets into a question as to what the underlying proceedings are about. And I think – Well, the underlying proceedings are about somebody screwed up, right? Here the allegation is that the people who screwed up were the European regulators or the former managers of Banco Popular, yes. And so – And if Sandander got documents that – produced by Banco Popular, which indicated some financial irregularity, to pick up on Judge Parker's thread, why is that not relevant to what's going on in Spain? And I think – again, I think then it depends – the answer depends on what exactly the specific alleged contacts here are. I mean, if the allegations are that we received information here in New York City that is – somehow gives rise to or led to the resolution, then yes, Your Honor, I think that there would be that connection. I don't think – in answering the hypothetical, I don't think that that connection exists here because – Was that adequately explored by the district court? I think the district court looked at the allegations that were made here for a specific jurisdiction and concluded that they were far too thin to have that – I don't know if the district court did, but did it analyze it in terms of what I – something along the lines of what I suggested? I think what the district court did was it said, look, there are no allegations about – non-speculative allegations about things that happened before the resolution, so I don't need to get into this question, Your Honor, that you're asking. I think if there were non-speculative allegations about things that came to New York City, documents, fraudulent documents that came to New York City and were relied on before the resolution, again, we would have a different case and the district court may need to go into a deeper analysis, but here the allegations have to do with things that happened afterwards or they're totally speculative allegations about things that may or may not have happened in New York City. They allege, as I said, that the CEO of Santander rang the bell at the New York Stock Exchange. They allege that we hired Citibank, but there's no indication and there's no – it's not a reasonable inference that the Citibank individuals who we used were located in New York City. We're talking about a Spanish bank doing due diligence on another Spanish bank. Would you concede if the contacts along those lines were stronger, there'd be a much stronger case for enforcing the 1782 subpoena? Your Honor, if 1782 extends a specific jurisdiction, I think there would be a different case. Did we want to talk about extraterritoriality at all, Your Honor? I do think it's relevant to remember for this particular reason. The factual allegations that they've alleged relate only to Santander. They do not relate to Santander Holdings. They do not relate to Santander Bank. The undisputed affidavits in the record as to Santander show that all of those documents are located overseas. Santander, the Calvo after declaration we have, says that the documents are primarily, the vast majority are in Spain. Some are in the United Kingdom. The only documents that are acknowledged to be in the United States that are potentially relevant are documents of Santander Holdings. They have made no allegations at all with respect to any contacts in New York City. How is that relevant to the congressional intent in 1782 to reach documents that are abroad? Isn't that our analysis? Don't we look at the statute to see what did Congress intend? Does it override the presumption against extraterritoriality? Yes, Your Honor. I just wanted to clarify that as to if you're looking at specific jurisdiction, you're only looking at Santander. I think the reason you need to resolve the extraterritoriality question is because all of those documents are overseas. As to the analysis there, we think, first of all, the presumption applies under Morrison and cases of this court. Secondly, we don't think the presumption is overcome because the federal rules of civil procedure are not mandatory in the statute, and they don't give the authority for the district court to aid a foreign proceeding. I think, Your Honors, if you look at the Al-Fayed versus CIA case from the D.C. Circuit, it provides a good explanation of the antecedent question as to where the authority comes from. It doesn't come from the FRCP. It comes from the statute, the new statutory language. And so then I think, Judge Droney, we're into the second step of the extraterritoriality analysis, the focus. And I think as to the focus, the Supreme Court's recent decision in Western Gecko, the one that came out last spring by Justice Thomas, it says when you're looking at the focus, you're looking for the overriding purpose of the statute. The focus is not in that case, it was a damages remedy statute. It had to do with damages for copyright infringement. And what the Supreme Court concluded is the focus there was not the damages being rewarded, but what is the overriding purpose. The overriding purpose was the infringement. And so what the court looked to is where does the infringement occur. We think the overriding purpose of 1782, as the Supreme Court explained in Intel, is giving access to this evidence. And there's nothing in the statute that says the access to that evidence has to occur in the United States. In fact, if you're doing subpoenas under Rule 45 for someone who's 100 miles away from the district, that has to occur in Spain. So the focus of the statute is the access to the evidence. That access, in this case, could occur overseas, so it's not a purely domestic application of the statute. And I think you can't apply this statute extraterritorially. Thank you. Thank you, Your Honor. Mr. Rubenstein. Thank you, Your Honor. I'd like to begin by addressing the question of whether and to what extent Santander's conduct prior to the resolution actually is at issue in the foreign proceedings. It very much is. If the court looks at the request for arbitration that's been filed, and that's at page 1445 of the appendix, the request for arbitration goes into great detail about the activities that Santander engaged in, including its contacts with the Spanish government in the weeks leading up to the resolution. It also specifically refers in the request for arbitration to Santander's due diligence efforts prior to the resolution and the acquisition. And as we've explained, the registration statements that Santander filed with the SEC make clear that the capital raise was an essential requirement in order for Santander to be able to proceed with the acquisition in order to avoid a material adverse change on its financial condition. Now, we are not asserting a claim in those foreign proceedings against Santander, which is precisely why the concept of imposing a but-for cause requirement doesn't really make any sense. We would essentially be having to make a claim against Santander or be suggesting that the conduct they engaged in actually gives rise to liability when the whole point of 1782 is to allow for discovery from non-parties. And so I think the record is clear that the conduct that Santander engaged in and the information that we are seeking from Santander is directly related to the claims that are being asserted at both the European Court of Justice as well as in the international arbitration, which is precisely why we're seeking this information in order to be able to use it in those proceedings. Would the documents that you're seeking here in New York be ‑‑ excuse me, does the document request that you're making here in New York extend to documents worldwide? It seeks documents that are in their possession, custody, and control. We have their declarations as to where those documents are located, but we don't know exactly where the documents are located. That will be something that would obviously have to be decided during the course of the discovery process itself. They have presented affidavit testimony that the documents we're seeking are substantially located in Spain, but I think it is important that the due diligence that was done by Santander involve two New York investment banks, Citi and UBS. And again, we don't know exactly who did what. I mean, that's precisely the reason why we are seeking the discovery in the first place. I want to go back to Judge Parker's ‑‑ Before you do that, and I'm happy to have you do that, but could you go to Citi and UBS here and get those documents? Not that I'm trying to run your discovery. Presumably. But again, what we know is that in the foreign proceedings, Santander's activities and its contacts with the Spanish government are directly related to the claims that are being brought against both the Spanish government as well as the European Union. We have no claims with regard to any activities by Citi. Partly the reason is we haven't seen what exactly Citi did. Why don't you go to Spain and get these documents? So the reason is that my clients are seeking to use these documents in two foreign proceedings, international arbitration proceedings against the government of Spain and claims at the European Court of Justice. Santander is not a party to those cases. Santander has tried to intervene in those cases, but those intervention applications have not been granted. Are there no mechanisms for getting third-party discovery in Spain? No. We have presented below expert testimony that where you have a non-party, the court and the arbitral tribunal cannot order those non-parties to produce documents. And I think that is important because I don't want the record to reflect or suggest that we're trying to circumvent any foreign proof-gathering restrictions. That is not the case. And, in fact, the judge, Judge Ramos, found that the documents that are being sought are beyond the control, beyond the reach of the foreign tribunals. And we would submit that that was a correct determination. Going back to Judge Parker's question, what is the test? What does found mean? And we believe that, consistent with Edelman and other courts that have interpreted the term found in other jurisdiction statutes, we think that, essentially, there is no bright line, but we think that it requires sufficient context in the district to meet two requirements. One, the discovery must arise from or relate to the respondent's context in the district. And, second, those contexts, in their totality, which would include the related to context and general context with the district, must be sufficient to satisfy due process. And we think that those two requirements, in combination with the discretion that courts have both under Section 1782 and the intel factors, as well as the discretion that the courts have applying the federal rules, we think that that will be sufficient to avoid any sort of slippery slope or any clearinghouse from arising. And, as Mr. Mader said, if that were to be incorrect, and we don't think it is, obviously then it would be up to Congress to decide to intervene. But we don't think that's necessary. We think that the related to requirement and we think that the due process requirements of minimum context provide plenty of safeguards to prevent any sort of abuse of the statute. Did Judge Ramos find the related to piece of this? Or does he need to consider that in the context of our analysis? So our view is that the judge did not consider the related to component. He certainly articulated the test, but he only applied the arises from piece of it. Do they mean the same thing? We think they don't. I mean, we think that the difference between related to and arise from. Well, arise from, and again, I think that the easiest way to assess that is in the context of a liability case. If the respondent's or defendant's contacts give rise to the cause of action, that's one thing. If, on the other hand, their related to involves items that would not necessarily be related to the contacts in the district. So a good example, actually, would be in Chloe. In Chloe, this court held that there was sufficient personal jurisdiction, even though the respondent counterfeiter had only sold one counterfeit bag into New York City. The court, though, also looked at other sales of counterfeit bags involving other manufacturers, even though the underlying cause of action for trademark infringement didn't arise from the sale of counterfeit bags involving other manufacturers, but the court said they do relate to the contacts in the district, and that, in combination, the court held was sufficient to establish specific personal jurisdiction. Thank you very much. Thank you, all three of you. Thank you all. Good arguments, helpful, and not surprisingly, well-reserved decision.